## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BIG BEINGS USA PTY LTD AND LB ONLINE & EXPORT PTY LTD d/b/a LOVE TO DREAM ONLINE AND EXPORTS,<br><br>        Plaintiffs,<br><br>   v.<br><br>NESTED BEAN, INC.,<br><br>        Defendant. | No. 1:20-cv-10101-IT |

## NESTED BEAN'S MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM

# **TABLE OF CONTENTS**

Table of Contents ................................................................................................................... ii

Table of Authorities ............................................................................................................. iii

Table of Exhibits ................................................................................................................... v

I.    Background of the '711 Patent, Its Prosecution History, and Big Being's
      Infringement Allegations ............................................................................................ 3

      A.    The '711 Patent Disclosed Three Distinct Embodiments ......................................... 4

      B.    Big Beings Disclaims "T-like" Embodiments During Prosecution ......................... 6

      C.    Big Beings Further Amended Its Claims to Recite Progressively
            Higher Wing Tips, Abandoning Claims to Lower Wing Tips ................................ 9

II.   Legal Standards for a Motion to Dismiss .......................................................... 13

III.  Big Beings Fails To State A Claim for Patent Infringement ............................... 14

      A.    Big Beings Alleges Infringement of a Disclaimed Embodiment,
            Proving that Nested Bean Cannot Infringe the '711 Patent ................................... 14

      B.    Big Beings Cannot Allege Infringement Under the Doctrine of
            Equivalents Because it is Estopped from Doing So ................................................ 21

IV.   Big Beings' Claim for Unjust Enrichment is Preempted ................................... 23

V.    Big Beings' Complaint Should Be Dismissed With Prejudice .......................... 24

VI.   Conclusion ............................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)............................................................................................13, 24

*Bd. Of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp.,*
  533 F.3d 1362 (Fed. Cir. 2008)..................................................................................18

*Boateng v. InterAmerican Univ.,*
  210 F.3d 56 (1st Cir.2000).........................................................................................13

*Bradley v. Chiron Corp.,*
  136 F.3d 1317 (Fed. Cir. 1998)..................................................................................25

*Chawla v. Pitter,*
  2015 WL 6509119 (D. Mass. 2015) ...........................................................................24

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,*
  228 F.3d 24 (1st Cir. 2000).................................................................................13, 17

*In re Colonial Mortg. Bankers Corp.,*
  324 F.3d 12 (1st Cir. 2003).........................................................................................13

*Duramed Pharm., Inc. v. Paddock Labs., Inc.,*
  644 F.3d 1376 (Fed. Cir. 2011)..................................................................................22

*Eagle Pharm. Inc. v. Slayback Pharma LLC,*
  382 F. Supp. 3d 341 (D. Del. 2019)...........................................................................22

*Ekchian v. Home Depot, Inc.,*
  104 F.3d 1299 (Fed. Cir. 1997)............................................................................13, 14

*Emseal Joint Sys., Ltd. v. Schul Int'l Co., LLC,*
  2018 WL 3733939 (D.N.H. 2018)..............................................................................23

*Festo Corp v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
  344 F.3d 1359 (Fed. Cir. 2003)............................................................................21, 22

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
  493 F.3d 1368 (Fed. Cir. 2007)..................................................................................23

*Genentech, Inc. v. Wellcome Found. Ltd.,*
  29 F.3d 1555 (Fed. Cir. 1994)......................................................................................1

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.,*
  49 F.3d 1551 (Fed. Cir. 1995)....................................................................................19

*Hoganas AB v. Dresser Indus., Inc.*,
  9 F.3d 948 (Fed. Cir. 1993)..................................................................13

*Hughes Aircraft Co. v. U.S.*,
  717 F.2d 1351 (Fed. Cir. 1983)............................................................22

*Jansen v. Rexall Sundown, Inc.*,
  342 F.3d 1329 (Fed. Cir. 2003)......................................................18, 20

*Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*,
  285 F.3d 1046 (Fed. Cir. 2002)............................................................23

*Kennedy v. Josephthal & Co.*,
  814 F.2d 798 (1st Cir. 1987)................................................................24

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)............................................................20

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
  175 F. App'x 350 (Fed. Cir. 2006) .......................................................16

*Southwall Technologies, Inc. v. Cardinal IG Co.*,
  54 F.3d 1570 (Fed. Cir. 1995)..............................................................21

*SRAM Corp. v. AD-II Eng'g, Inc.*,
  109 F. App'x 398 (Fed. Cir. 2004) .......................................................14

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
  897 F.2d 511 (Fed. Cir. 1990)..............................................................14

*Techtronic Indus. Co. v. Int'l Trade Comm'n*,
  944 F.3d 901 (Fed. Cir. 2019)..............................................................14

*Thomas & Betts Corp. v. Litton Sys., Inc.*,
  720 F.2d 1572 (Fed. Cir. 1983)............................................................21

*Unique Concepts, Inc. v. Brown*,
  939 F.2d 1558 (Fed. Cir. 1991)..............................................................1

*Univ. of Colo. Found. v. Am. Cyanamid Co.*,
  196 F.3d 1366 (Fed. Cir. 1999)............................................................23

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*,
  904 F.2d 677 (Fed. Cir. 1990)..............................................................21

## TABLE OF EXHIBITS[1]

| Exhibit | Description (Short Name in Memorandum) |
| --- | --- |
| Carnevale Decl., Ex. A | U.S. Patent No. 9,179,711 (the "'711 Patent") |
| Carnevale Decl., Ex. B | U.S. Patent Publication No. 2009/0064390 ("Beiring") |
| Carnevale Decl., Ex. C | WO2007/098558 ("Moss") |
| Carnevale Decl., Ex. D | U.S. Patent No. 3,259,126 ("Greiert") |
| Carnevale Decl., Ex. E | Original Specification (as-filed) ("*Original Specification* (Aug. 27, 2010)") |
| Carnevale Decl., Ex. F | Second Preliminary Amendment and Claims ("*2d Prelim. Amendment* (June 8, 2011)") |
| Carnevale Decl., Ex. G | First Non-Final Rejection ("*First OA* (Oct. 11, 2011)") |
| Carnevale Decl., Ex. H | Response to First Non-Final Rejection ("*Response to First OA* (Feb. 10, 2012)") |
| Carnevale Decl., Ex. I | First Final Rejection ("*Final OA* (Jul. 12, 2012)") |
| Carnevale Decl., Ex. J | Amendment Submitted with Request for Continued Examination ("*Response to Final OA* (Nov. 28, 2012)") |
| Carnevale Decl., Ex. K | Second Non-Final Rejection ("*OA* (June 10, 2014)") |
| Carnevale Decl., Ex. L | Response to Second Non-Final Rejection ("*Response to OA* (Nov. 10, 2014)") |
| Carnevale Decl., Ex. M | Second Final Rejection ("*Final OA* (Dec. 29, 2014)") |
| Carnevale Decl., Ex. N | Interview Summary ("*Applicant-Initiated Interview Summary* (Mar. 26, 2015)") |
| Carnevale Decl., Ex. O | Response After Second Final Rejection ("*Response to OA (not entered)* (Mar. 30, 2015)") |
| Carnevale Decl., Ex. P | Advisory Action ("*Advisory Action* (Apr. 6, 2015)") |
| Carnevale Decl., Ex. Q | Amendment Submitted with Request for Continued Examination ("*Response to OA* (Apr. 29, 2015)") |
| Carnevale Decl., Ex. R | Notice of Allowance ("*Notice of Allowance* (June 30, 2015)") |

---

[1] The "Carnevale Decl.," refers to the *Declaration of Eric P. Carnevale in Support of Nested Bean's Motion to Dismiss the Complaint for Failure to State a Claim*, and the exhibits thereto.

| Exhibit | Description (Short Name in Memorandum) |
|---|---|
| Carnevale Decl., Ex. S | Excerpts from the Nested Bean website, located at the Internet address nestedbean.com/products/zen-one-classic. |

Defendant Nested Bean, Inc. ("Nested Bean") respectfully moves to dismiss the Complaint filed by Plaintiffs Big Beings USA PTY LTD and LB Online & Export PTY LTD d/b/a Love to Dream Online and Exports (collectively "Big Beings") for failure to state a claim for relief that can be granted.  Fed. R. Civ. P. 12(b)(6).  Big Beings' complaint for patent infringement should be dismissed because its allegations: (1) are based on subject matter that it expressly disclaimed during prosecution of U.S. Patent. No. 9,179,711 (the "'711 Patent"); and (2) show that Nested Bean's Zen One (the "Zen One") convertible swaddle does not infringe the asserted claims.  There is no need to burden the Court and the parties with extensive discovery when Big Beings' allegations fail to state a claim for relief, and Big Beings should have known before filing suit that its own prosecution history disclaimed the very product features it now accuses of infringement.

It is bedrock patent law that "subject matter disclosed but not claimed in a patent application is dedicated to the public."  *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562-63 (Fed. Cir. 1991).  "An applicant should not be able deliberately to narrow the scope of examination to avoid during prosecution scrutiny by the PTO of subject matter with the objective of more quickly obtaining a patent (or avoiding the risk of an estoppel), and then obtain in court, either literally or under the doctrine of equivalents, a scope of protection which encompasses that subject matter."  *Genentech, Inc. v. Wellcome Found. Ltd.,* 29 F.3d 1555, 1564 (Fed. Cir. 1994).

Big Beings is attempting to obtain in court the broad patent protection it failed to receive at the Patent Office.  During prosecution of the '711 Patent, the patent examiner would not permit the patent to issue with claims directed to the embodiment shown in Figures 1A-1C.  Big Beings was forced to specifically disclaim this embodiment to obtain allowance of its claims.  Now, in litigation, Big Beings is attempting to recapture the claim scope it surrendered during

prosecution.  Big Beings argues that Nested Bean's Zen One allegedly infringes the '711 Patent as exemplified in Figures 1A-1C of the patent, an embodiment that was specifically disclaimed during prosecution and that the claims of the '711 Patent do not cover as a matter of law. *Complaint,* Ex. B, at 6, 10.

The '711 Patent discloses a "swaddling suit" for infants that includes different configurations of "wing portions" for limiting the movement of a baby's arms.  *Complaint*, at 3. The preferred embodiment includes a swaddling suit with wing portions "near the shoulder line" of the suit that form a "T-like shape."  *'711 Patent,* Dkt. 1-1, at 6:29-36.  Other embodiments eschew the "T-like shape" in favor of wing portions that "clearly extend above the shoulder line."  *Id.* at 9:9-14.

Over the course of an extensive five-year prosecution, the scope of the '711 Patent's claims were consistently narrowed to overcome prior art rejections.  The issued claims excluded several embodiments except for swaddling suits with wing tips extending "above a level of the neck hole of the suit."  *'711 Patent*, Claims 1, 2.  First, Big Beings was forced to disclaim garments having a "T-like shape."  Then, Big Beings disclaimed garments having the tips of the "wing portions" extending "towards" the shoulder line of the suit.  Big Beings then further disclaimed garments having wing tips extending "above the shoulder line of the suit."  The examiner would not allow the claims to issue until Big Beings consented to narrow the claims to only those embodiments having wing tips "above a level of the neck hole" of the garment.

Although Big Beings disclaimed most of the embodiments disclosed in the '711 Patent, and the examiner specifically refused to allow claims directed to the embodiments shown in Figures 1A-1C of the '711 Patent, Big Beings filed this litigation to stop the sale of a product that does not have wing tips rising above a level of the neck hole of the suit.  Even the images of

2

the Zen One relied upon in the Complaint clearly demonstrate that the Zen One has removable

pouches, allegedly the "wing portions" of the '711 Patent, that do not rise above the neck hole.

Big Beings, an Australian company, is asserting the '711 Patent against a product that

clearly does not infringe the patent in an effort to force a small, Massachusetts-based competitor

out of the market. Patent litigation is expensive, and the costs of years of litigation over even

frivolous patent infringement claims can be enough to make a defendant's product not

commercially viable. The Court need not waste undue time and resources litigating claims that

the patentee knows its patent does not cover. Big Beings' Complaint should be dismissed with

prejudice.

## I.  BACKGROUND OF THE '711 PATENT, ITS PROSECUTION HISTORY, AND BIG BEING'S INFRINGEMENT ALLEGATIONS

Over a five-year prosecution, Big Beings was forced to progressively narrow the scope of

its claims and disclaim subject matter. Big Beings disclaimed embodiments having the T-like

shape illustrated in Figure 1 of the '711 Patent, as well as embodiments having wing tips ***towards***

the shoulder line of the suit. Big Beings further disclaimed embodiments having wing tips ***above***

the shoulder line of the suit. After many rejections and changes to the claims, the '711 Patent

issued with claims narrowly directed to embodiments having wing tips above a level of the neck

hole.

Big Beings recognized that it was disclosing a narrow invention among a crowded prior

art field at the time it filed its application. More than one third of its patent disclosure identifies

prior art and attempts to distinguish it. *'711 Patent*, 2:29-4:56. Big Beings did not invent the

swaddling suit, which has been around in various forms for more than a half-century. *Id.* at 1:14-

2:28. Big Beings characterized its own invention as narrowly directed to providing "a new or

alternative swaddling suit" differing from the prior art "by allowing movement of the hands

3

towards the mouth and maintaining the hand position relative to the infant's face." *Id.* at 4:57-63. Ironically, Big Beings' summary of the invention does not mention several limitations it was forced to add to the claims. *See id.* at 4:67-5:61. Big Beings was forced to narrow its claims to disclaim even what it regarded as its original invention, in view of closely related prior art. *Id.*

### A.    The '711 Patent Disclosed Three Distinct Embodiments

The '711 Patent discloses three distinct embodiments of a sleeping suit. The main difference among the embodiments is the location of the "wing tips" relative to the shoulder line (dotted line in Fig. 1A, right) of the suit.

Figures 1A-1C disclose a "preferred" embodiment of the purported invention that has wing portions near the shoulder line, forming a "T-like shape" with the bodice portion:



FIG. 1A

> On each side of the bodice portion 130 is ***a wing portion 140 near the shoulder line of the suit 100***. In this way, ***the wing portion 140 forms a T-like shape with the bodice portion 130 seen in FIGS. 1A and 1B as a rounded T-shape formed by the wing portions 140 extending laterally from the bodice portion 130 at the upper-most portion of the suit***.

*'711 Patent*, at 6:29-36.[2] The T-shape of this embodiment was considered to be particularly important to the alleged invention:

> ***A further advantage of the T-like configuration of wing portions*** retaining the arms and hands in the hands-raised position on both sides of the infant is that the swaddled infant laid supine (on the back) for sleep is hindered from rolling over the arms onto the prone (face down ) position.

*Id.* at 7:26-31. Further, the wings of the suit in Figures 1A and 1B were described as "resilient," in order to "assist in tending the limbs towards the body." *Id.* at 8:1-26.

---

[2] All emphasis is added unless otherwise noted.

4

Figures 2A and 2B show an alternate version of the "preferred" embodiment that eschews the T-shape design in favor of wing tips that extend further above the shoulders:



FIG. 2A

> Referring to FIGS 2A and 2B, an alternative arrangement of the embodiment illustrated in FIGS 1A and 1B is shown, in **which the swaddling suit 100 has wing tips 150 that clearly extend above the shoulder line** (the approximate position of the shoulder line is demarcated by the dashed line labeled X in FIGS 2A and 2b[sic]). **It can be seen by comparing FIGS. 1 and 2 that the wing tip 150 (i.e. the uppermost portion of the wing portion 140) may be shaped to accommodate the hands at or near the shoulder line (FIGS. 1A and 1B) or above the shoulder line (FIGS. 2A and 2B)**.

*'711 Patent*, at 9:9-19.  Figures 3A, 3B, 4A, and 4B show a version of the embodiment disclosed in Figure 2, having wing tips that clearly extend above the shoulder line as in Figure 2, but where the wings are also removable.  *Id.* at 9:22-29.

The final embodiment disclosed in the '711 Patent is shown in figures 5A through 5E.  *Id.* at 9:60-10:22.  In contrast to the preferred embodiment, where the T-like shape retains the infant's hands at or near the shoulder line of the swaddling suit, the final embodiment is "configured to receive the arms in a hand-raised position, with the hands raised above the shoulder line," and also has tension pouches between the wing and the bodice that keep the hands in a fixed position.  *Id.* at 9:60-10:22.  Instead of pressing the hands *towards* the face in the manner of the "resilient" wings of the preferred embodiment, the tension pouches resisted movement of the hands *away* from the face.  *Id.* at 10:7-11.



FIG. 5A

Thus, each of the embodiments disclosed in the '711 Patent discloses wing tips that rise progressively higher above the shoulder line of the swaddling suit:



*"T-like" Embodiment*



*"Wing tips extend above the shoulder line" Embodiment*



*"Wing tips extend above the neck line" Embodiment*

The particular descriptions of these embodiments became relevant during the prosecution of the '711 Patent because the patent examiner identified prior art that completely anticipated or rendered obvious some embodiments, and only permitted narrow claims to issue directed to the embodiment having wing tips above a level of the neck line.

### B. Big Beings Disclaims "T-like" Embodiments During Prosecution

Big Beings struggled to secure allowance of its patent claims because relevant prior art was plentiful.  Big Beings was forced to amend claim 1 of its patent **six times** to overcome the examiner's rejections, including rejections for lack of novelty and non-obviousness over the prior art.  In the course of these amendments, Big Beings abandoned claims directed to embodiments having wing portions "near the shoulder line" of the suit, as well as embodiments "forming a T-like shape with the bodice portion," both definitive characteristics of the '711 Patent's "T-like" embodiment.

Following two preliminary amendments, the first set of claims considered by the examiner contained two independent claims directed at swaddling suits.  *2d Prelim. Amendment*

(June 8, 2011), at 2, 7 (claims 1 and 25).  Big Beings' claim 1 is representative and was directed to swaddling suits with "resilient" wing portions:

> 1. A swaddling suit for swaddling an infant, including:
>
>> an upper portion for enclosing an infant's upper body, wherein the upper portion includes
>>
>> (a) a bodice portion for enclosing an infant's torso, and
>>
>> (b) ***a wing portion near the suit's shoulder line on each side of the bodice portion,*** the bodice portion being configured to receive and retain the infant's arm(s) in a hand-raised position, with the hand(s) maintained in position relative to the infant's face, the wing portion being resilient to bias the infant's arm(s) in an elbow-bent-and-hand-raised position toward the infant's body, thereby further assisting to maintain the hand(s) near the infant's face such that the swaddling suit restricts movement of the infant's limbs away from the body while maintaining the infant's hand(s) in position relative to the infant's face and allowing movement of the hand(s) towards the infant's mouth to facilitate non-nutritive sucking.

*Id.* at 2.  Claim 25 was substantially similar but was directed to a "tension pouch" embodiment. *Id.* at 7.  Separately, Claim 6, which depended from both claims 1 and 25, added the limitation that the wing portion "forms a T-like shape with the bodice portion." *Id.* at 3-4.

In the first Office Action, the examiner rejected claim 1 as anticipated by U.S. Patent Publication No. 2009/0064390 ("Beiring"). *First OA* (Oct. 11, 2011), at 10-11.  With respect to the wings, the examiner found that Beiring disclosed "a wing portion (arm hole coverings M & J in figure 1) near the shoulder line on each side of the bodice portion." *Id.*  The examiner further rejected claim 6 over Beiring because it "also discloses that the upper portion . . . is configured so that the wing portion (flaps J&M) forms a T-like shape." *Id.* at 12.

In response to the examiner's rejection, Big Beings made insubstantial changes to claims 1 and 25. *Response to First OA* (Feb. 10, 2012)*, at 8-14.  Big Beings attempted to traverse the

rejection by arguing that Beiring did not disclose wing portions that were "resilient," but this argument was not persuasive. *Id.*; *Final OA* (Jul. 12, 2012), at 7-10.

Following the examiner's second rejection, Big Beings substantially rewrote claim 1, adding limitations to more specifically claim the T-like embodiment:

> . . . (b) one wing portion near a shoulder line of the swaddling suit on one side of the bodice portion and another wing portion near the shoulder line of the swaddling suit on another side of the bodice portion, <u>said wing portions forming a T-like shape with the bodice portion and extending laterally from the bodice portion at the uppermost portion of the suit,</u> <u>whereby</u> the ~~bodice portion being configured to receive and retain an~~ infant's arm(s) <u>can be retained</u> in a hand-raised position, with the infant's hand(s) above the shoulder line, the wing portion<u>(s)</u> being <u>sufficiently</u> resilient <u>to exert a compressive force that resists extension thereof, whereby</u> ~~to bias~~ the infant's arm(s) <u>is biased</u> in ~~an~~ <u>said</u> elbow-bent-and-hand-raised position toward the infant's body~~, thereby further assisting to maintain~~ <u>and</u> the <u>infant's</u> hand(s) ~~are~~ <u>is</u> ~~near the infant's face~~ <u>accessible to the infant's mouth</u> . . .

*Response to Final OA* (Nov. 28, 2012), at 5-6 (words added by amendment are underlined; words deleted by amendment are shown in strikethrough). For the first time, Big Beings presented independent claims narrowly targeting the T-like embodiment.

The examiner again rejected claim 1 over Beiring and reiterated her earlier reasoning with respect to the T-like embodiment. *OA* (June 10, 2014), at 14-15. This time, the examiner also provided figures from Beiring identifying where Big Beings' claimed elements could be found, including placing emphasis on the T-like shape of the swaddling suits in Beiring:




*OA (June 10, 2014), at 26, FIG. A (Beiring FIG. 1 with examiner's annotations)*

*OA (June 10, 2014), at 26, FIG. B (Beiring FIG. 1 with examiner's annotations)*

Following this rejection, Big Beings again amended its claims, completely removing claim elements directed to the "T-like" embodiment and canceling dependent claim 6. *Response to OA* (Nov. 10, 2014), at 2-3. Big Beings also rewrote claim 25, removing claim elements directed to the "tension pouch" embodiment. *Id.* at 6-7. With respect to both independent claims, Big Beings attempted to traverse the rejections over Beiring by claiming wing tips that are "large enough to completely surround and retain the arms of the infant," and where the narrowest portion of the claimed swaddling suit was at the waistline. *Id.* at 9-10. Big Beings never attempted to reintroduce claims directed to the T-like embodiment.

### C. Big Beings Further Amended Its Claims to Recite Progressively Higher Wing Tips, Abandoning Claims to Lower Wing Tips

Even after abandoning claims directed to the T-like embodiment disclosed in Figures 1A and 1B of the '711 Patent, Big Beings was unable to get its claims allowed. The examiner rejected the claims again, and required Big Beings to further limit its claims to require progressively higher wing tips.

On December 29, 2014, the examiner rejected Big Beings' claims for being obvious over

the prior art, including WO2007/098558 ("Moss") and U.S. Pat. 3,259,126 ("Greiert"). *Final*

*OA* (Dec. 29, 2014), at 6-12. Moss was cited for teaching a swaddling suit with wings that can

completely surround and retain the infant's arms:

 

*WO 2007/098558 ("Moss"), FIG. 4*     *U.S. Pat. 3,259,126 ("Greiert"), FIG. 3.*

Big Beings requested an interview with the examiner before formally responding to the office

action. *Applicant-Initiated Interview Summary* (Mar. 26, 2015), at 3. The examiner suggested

that the claims be further limited to include language from the portion of the patent specification

discussing Big Beings' later embodiments:

> ***Examiner specifically suggested that Applicant consider amending the
> claims to include language from i.e. page 16 of Applicants [sic] original
> specification directed to disclosure of the structure of the wing tips that
> extend above the shoulder line of the suit*** such as in the embodiment shown
> in figures 5a/5b because it appears as though the prior art of Moss and
> Greiert confine a babys [sic] arms to at or below the shoulder line of the
> suit.

*Id.* The Applicant's original specification described wing tips that "clearly extend above the

shoulder line." *Original Specification* (Aug. 27, 2010)*,* at ¶ [0093] ("Referring to Figure 2, an

alternative arrangement of the embodiment illustrated in Figure 1 is shown, in which the

swaddling suit 100 has wing tips 150 that clearly extend above the shoulder line (the

approximate position of the shoulder line is demarcated by the dashed line labelled X in Figure

2).").

Big Beings initially did not adopt all the changes demanded by the examiner, and instead

amended claims 1 and 25 to recite wing tips "extending *toward* a shoulder line of said suit."

*Response to OA (not entered)* (Mar. 30, 2015), at 4, 7.  The examiner refused to enter Big

Beings' amendments, because Big Beings had failed to make the amendments discussed and had

included new claim language that had not been discussed.  *Advisory Action* (Apr. 6, 2015), at 1-

2.  The examiner emphasized that the wing tips would have to be claimed higher than the

shoulder line if Big Beings were to secure allowance of the claims:

> Specifically, Examiner(s) and Applicant discussed proposed amendments
> in an interview on 3/26/15 (see Applicant-Initiated Interview Summary/
> paper no. 20150327) wherein Examiner(s) suggested further amending the
> claims to include limitations to define that the **wing tips extend ABOVE**
> **the shoulder line** of the suit as described on page 16 of Applicant's
> specification to differentiate the claimed invention from the prior art.

*Id.* (capitalization in original).  Big Beings relented to the examiner and resubmitted its

amendments to claim wing tips above a shoulder line of the suit.  *Response to OA* (Apr. 29,

2015), at 2-5.  Big Beings thereby abandoned claims directed to embodiments with wing *tips*

*towards the shoulder line of the suit* in favor of claiming wing tips rising above a shoulder line

of the suit, thereby dedicating those embodiments to the public.  *See id.*

Even Big Beings' amendments claiming wing tips "above the shoulder line" failed to be

persuade the examiner.  The examiner proposed one final amendment – changing the height of

the wing tips from "above *a shoulder line* of said suit" to "above *a level of the neck hole* of said

suit." *Notice of Allowance* (June 30, 2015), at 3-6 (noting Examiner's Amendment).  Big Beings

agreed to this further limitation of the claims requiring wing tips even higher, above the neck

hole, thereby ***abandoning claims to embodiments having wing tips above the shoulder line*** and dedicating those embodiments to the public.  *See '711 Patent*, Claims 1, 2.

The "level of the neck hole" is shown only once in the specification of the '711 Patent, and specifically refers to the inset appearing next to Figures 3A and 3B.  *'711 Patent*, at 6:60-63. In contrast to the shoulder line, shown as a dotted line on Figures 1A-1C, 2A-2B, 4A-4B and 5A-5E, the level of the neck hole is represented by a dotted line at the highest point of the bodice portion, at the peak of the hem of the neck opening:




| *'711 Patent, FIG. 3 (**level of neck hole** shown as dotted line on inset)* | *'711 Patent, FIG. 4A (**shoulder line** shown as dotted line).* |

The examiner clarified that she was applying this interpretation when she issued the Notice of Allowance, explaining that neither Moss nor Greiert disclosed wing tips rising above a level of the neck hole:

> Neither Moss nor Greiert, however, teach a wing tip at an uppermost portion of each of the wing portions of the suit wherein the **wing tip is positioned *above* a level of a neck hole of the suit**. In fact, in both the Moss and Greiert suits, the suit is constructed such that the arm/hand confining portions (equivalent to the claimed wing portions/wing tips) are **positioned at or below a level of a neck hole** in the suit. Specifically, in Moss, the pockets 32 on sides 30a/b in figures 1-3 have a tip portion (i.e. area where hand is positioned shown in figure 4) that is positioned slightly below the level of the opening at the baby's neck 18 (see i.e. figure 4).

*Notice of Allowance* (Jun. 30, 2015), at 6-7 (emphasis in original).  As shown in the figures above, Moss taught a V-neck configuration for the neck opening, extending down to the waistline.  *See Moss*, 4:9-21 ("The aperture 20 is approximately V-shaped and extends downwards from the top 15 of the suit towards the waist region 24.")  This clarified that "a level

of the neck hole" refers to the highest point of the neck hole. *Ekchian v. Home Depot, Inc.,* 104 F.3d 1299, 1304 (Fed. Cir. 1997) ("by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover"). That interpretation is required because the entire range of the neck hole in Moss extends from the waist at its lowest point, to at or slightly above the shoulder line at its highest point, and Big Beings' claims must be read as not covering what the patentee distinguished. *Id.*

## II.   <u>LEGAL STANDARDS FOR A MOTION TO DISMISS</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678.

A motion to dismiss is decided based on "not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice." *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003). A document is fairly incorporated in the complaint if it is "integral to or expressly relied upon in the complaint, even though not attached to the complaint." *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000).

The Court may also "look to matters of public record when deciding a Rule 12(b)(6) motion." *Boateng v. InterAmerican Univ.*, 210 F.3d 56, 60 (1st Cir. 2000). The Court may take judicial notice of patents because they are part of the public record. *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 (Fed. Cir. 1993). The Court may take judicial notice of

correspondence with the Patent and Trademark Office because it is also part of the public record.

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 514 n. 3 (Fed. Cir. 1990).

**III.   BIG BEINGS FAILS TO STATE A CLAIM FOR PATENT INFRINGEMENT**

> **A.   Big Beings Alleges Infringement of a Disclaimed Embodiment, Proving that Nested Bean Cannot Infringe the '711 Patent**

Big Beings' Complaint attached a set of claim charts purporting to show how Nested Bean's Zen One allegedly reads on claims 1 and 2 of the '711 Patent.  Significantly, Big Beings included figures from the '711 Patent showing where those claimed limitations are allegedly present in its own embodiments.  Big Beings repeatedly relies on its disclaimed "T-Like" embodiment for all the limitations concerning the alleged bodice or wing portions.  By showing that Nested Bean's Zen One allegedly reads on the claim limitations in the same way as its T-Like embodiment from Figure 1, Big Beings proves that Nested Bean cannot infringe, because the T-Like embodiment was disclaimed and is not within the literal scope of the claims.

Where a patent applicant has disclaimed an embodiment of their invention during prosecution, the patent cannot be construed to apply to any device that purports to read on that embodiment "either as a matter of literal infringement or infringement under the doctrine of equivalents."  *SRAM Corp. v. AD-II Eng'g, Inc.*, 109 F. App'x 398, 402 (Fed. Cir. 2004).  "A disavowal must be clear, but it need not be explicit."  *Techtronic Indus. Co. v. Int'l Trade Comm'n*, 944 F.3d 901, 907 (Fed. Cir. 2019).  In particular, "by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection."  *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997).

Big Beings alleges that Nested Beans' Zen One infringes independent claims 1 and 2 of the '711 Patent.  *Complaint*, Ex. B.  Both independent claims 1 and 2 recite the same limitation

regarding the location of the wing tips relative to the neck hole, and Big Beings alleges that

Nested Bean infringes both claims in exactly the same way. *Id.* That claim limitation requires:

> . . . each of said one wing portion and said another wing portion having a **wing tip at an uppermost portion of each of the wing portions that is positioned above a level of the neck hole of said suit**. . .

*'711 Patent*, Claim 1; *see also id.*, Claim 2. Big Beings' claim

charts include a column titled "Illustrations in the Specification and

File History" to show where the allegedly infringing structures of

the Zen One can allegedly be found in Big Beings' own

embodiments. *Complaint*, Ex. B, at 1. For the neck hole limitation,

and all limitations dealing with the "bodice" and "wing portions,"

Big Beings improperly relies on its disclaimed "T-Like"

embodiment. *Id.* at 12-13.



*Complaint*, Ex. B, at 13
(alleged wing tips circled)

Big Beings reiterates at several points in its claim charts that

its infringement allegations are specifically tied to this T-Like

embodiment. Big Beings alleges that the Zen One possesses "a 'bodice portion' as that term is

exemplified in Figures 1A – Figure 1C (to the left)." *Id.* at 6. Big Beings also alleges the Zen

One allegedly possesses "'wing portions' as that term is exemplified in Figures 1A – 1C." *Id.* at

6, 10. Big Beings explicitly claimed that Nested Bean's Zen One allegedly possesses not just the

claim limitations, but the claim limitations as "exemplified in Figures 1A – 1C." *Id.*

The problem with Big Beings allegations is that Big Beings specifically disclaimed the

embodiments it argues exemplify its allegations against Nested Bean. Big Beings disclaimed

this T-like embodiment when it amended its claims to remove language claiming "said wing

portions forming a T-like shape with the bodice portion." *Response to OA* (November 10, 2014),

at 2-3.  It also unambiguously disclaimed this T-Like embodiment when it tried and failed to get claims covering wing tips "extending ***toward*** a shoulder line of said suit."  *Response to OA* (Mar. 30, 2015), at 4-7.  The examiner's objection to this proposed claim language was that it failed to narrowly claim the alternative embodiments described on page 16 of the original specification, which the examiner required as a condition for allowance.  *Advisory Action* (Apr. 6, 2015), at 1-2.  By trying and failing to get broad claims that would cover its Figure 1, T-Like embodiment, but acceding to the examiner's requirements that it narrowly limit its claims to embodiments disclosed in Figures 2 and 5, Big Beings effected a clear and unambiguous disclaimer of the embodiments disclosed in Figure 1.  *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 175 F. App'x 350, 354–55 (Fed. Cir. 2006) ("when there is a clear disclaimer during the prosecution history, it may be appropriate to read out the preferred embodiments.").

The claim charts further prove that the Zen One does not literally infringe the claim.  Big Beings identifies the Zen One swaddle from images of the product taken from the Nested Bean website, at the Internet address <nestedbean.com/products/zen-one-classic> ("nestedbean.com").  An image of the Zen One taken from Big Beings claim charts is shown below, along with a higher resolution copy of the same image taken from the Nested Bean website, offered for clarity.





*Complaint*, Ex. B, at 1                    *Nestedbean.com* ("Open View")[3]

As shown in the images from Big Beings' Complaint, along with alternative views of the Zen

One also taken from the Nested Bean website, the alleged wings of the Zen One project laterally

from the shoulder line of the suit and do not rise above the level of the neck hole:





*NestedBean.com* ("Front View")          *NestedBean.com* ("Angled View")
(level of neck hole indicated in red)      (level of neck hole indicated in red)

---

[3] Because Big Beings' claim charts cite to the product page for the Zen One on Nested
Bean's website, images from Nested Bean's website are properly before this Court on a Motion
to Dismiss. *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st
Cir. 2000).

Rather, the wing tips of the Zen One swaddle appear no higher than those of the swaddle designs in Moss and Greiert, both of which have arms extending laterally from the shoulders, and which the examiner found to have wing portions "at or below a level of a neck hole in the suit." *Notice of Allowance* (Jun. 30, 2015), at 6-7.

 

WO 2007/098558 (Moss), FIG. 4
(level of neck hole marked in red)

U.S. Pat. 3,259,126 (Greiert), FIG. 3
(level of neck hole marked in red)

Big Beings is not permitted to expand its claims to include the T-shape device surrendered during prosecution. Claim language added after the application has "been persistently rejected[] must be strictly construed against the inventor and looked upon as disclaimers." *Jansen v. Rexall Sundown, Inc.*, 342 F.3d 1329, 1334 (Fed. Cir. 2003) (quoting *Smith v. Magic City Kennel Club, Inc.*, 282 U.S. 784, 790 (1931)). Such a strict construction is necessary to "clearly distinguish what is claimed from what went before in the art." *Bd. Of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1372 (Fed. Cir. 2008) (citing *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942)). Given the persistent rejections of broader claims over the course of several years, the examiner's amendment to bring the claim into a condition for allowance must be strictly construed against Big Beings. *Jansen*, 342 F.3d at 1333.

18

Big Beings' claim charts also strongly suggest that Big Beings was aware it was accusing the Zen One more broadly than its narrow claims covered, and sought to obscure that fact. Big Beings never affirmatively identifies what it regards as the "level of the neck hole."  Instead, it incorrectly points to the dotted line in Figure 1C for this limitation, which the



'711 Patent, FIG. 3 (inset) (**level of neck hole** shown as dotted line)

specification indicates is the *shoulder line* and not the level of the neck hole of the suit.  *See '711 Patent*, 9:9-21; *see also Complaint*, Ex. B, at 13.  The '711 Patent actually includes an inset to Figure 3 that shows what the patent regards as the "level of the neck hole," complete with a dotted line at the highest point of the neck opening, which Big Beings never cites to or shows in its charts.  *Id.* at FIG. 3 (inset), 6:60-63.

Big Beings has also attempted to hide the weaknesses in its infringement allegations by relying on images of infants wearing the garment and distorting its shape.  *See e.g., Complaint*, Ex. B, at 12-13 (limitation 1G).  But a non-infringing garment cannot be made to infringe by stretching it in such a way as to move the alleged wings above the neck.  *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995) ("But a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim.").  Claims 1 and 2 of the '711 Patent are only infringed if the suit as designed and constructed has wing tips above the neck hole of the suit, not whether an infant wearing the suit is capable of stretching the fabric by raising his arms above the level of his neck.  *See '711 Patent*, Claims 1-2.  The images of infants wearing a Nested Bean Zen One convertible swaddle fail to plausibly show the true and accurate proportions of the Zen One, and therefore fail to plausibly allege infringement of the '711 Patent.

Any argument over the proper placement of the line delineating "a level of the neck hole" must be resolved strictly against Big Beings, and was addressed in the intrinsic record.  *See Jansen*, 342 F.3d at 1333; *see also Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).  This claim term uses common words, is not complex or highly-technical, and its meaning in the context of the claim should be "readily apparent even to lay judges." *Phillips*, 415 F.3d at 1314.  The plain reading



*Moss*, FIG. 5
Lowest point of neck opening marked in blue
Highest point of neck opening marked in red

of the prosecution history shows that the examiner required the wing tips to rise "above a level of the neck hole" because "above a level of the shoulder line" did not bring the wing tips high enough to avoid the prior art.

Moss, the prior art reference relied upon by the examiner, discloses suits having a v-shaped neck opening extending down to the suit's waist.  *See Moss*, FIGs. 1-8.  There is no dispute that the examiner's primary basis for rejecting the claims before the addition of the "neck hole" limitation was that the wing tips were not claimed to be high enough.  *See supra* Parts I.B-I.C.  Thus, a plain reading of the prosecution history shows that the "level of the neck hole" required by the examiner, and accepted by Big Beings as necessary for allowance, means the highest point of the neck opening.  *Id.*  Any other interpretation of the neck hole limitation would have failed to overcome the prior art.

The patent and prosecution history unambiguously show that Big Beings was only granted a patent on a narrow embodiment disclosed in the '711 Patent wherein the alleged wing tips must clearly rise above the shoulders, and higher than a level of the neck hole of the suit. The Zen One convertible swaddle does not possess this claim limitation, and therefore does not literally infringe any claim of the '711 Patent.

### B. Big Beings Cannot Allege Infringement Under the Doctrine of Equivalents Because it is Estopped from Doing So

Big Beings' claim charts do not allege that any limitation of the '711 Patent is infringed under the doctrine of equivalents ("DOE"), and thus, the Court need not consider any allegation arising under the DOE in this case. Regardless, Big Beings is barred from asserting infringement under DOE due to prosecution history estoppel.

In certain cases, a patentee can rely on DOE to cover an accused device that is outside of the literal scope of the claims if "it performs substantially the same function in substantially the same way to obtain the same result." *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995) (citations omitted). But, the doctrine of equivalents "is not a tool for expanding the protection of a patent after examination has been completed." *Id.* Patentees are prevented "from contending later in an infringement action that his claims should be interpreted as if limitations added by amendment were not present." *Thomas & Betts Corp. v. Litton Sys., Inc.*, 720 F.2d 1572, 1579 (Fed. Cir. 1983); *see also Wilson Sporting Goods Co. v. David Geoffrey & Associates*, 904 F.2d 677, 684 (Fed. Cir. 1990) ("there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art.").

Prosecution history estoppel "arises when a patent applicant narrows the scope of his claims during prosecution for a "substantial reason relating to patentability." *Festo Corp v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003). It applies

both "to claim amendments to overcome rejections based on prior art, and to arguments submitted to obtain the patent." *Hughes Aircraft Co. v. U.S.*, 717 F.2d 1351, 1362 (Fed. Cir. 1983).  Any narrowing amendment or argument creates a "presumption of total surrender" of all alleged equivalents under the doctrine of equivalents.  *Festo*, 344 F.3d at 1367 (Fed. Cir. 2003). The only way to rebut the presumption of total surrender is by "demonstrating that [the patentee] did not surrender the particular equivalent in question." *Id.*  Prosecution history estoppel is a purely legal question that may be decided on the pleadings.  *See e.g., Eagle Pharm. Inc. v. Slayback Pharma LLC*, 382 F. Supp. 3d 341, 345-45 (D. Del. 2019).

Because Big Beings does not allege infringement of any specific claim limitation under the doctrine of equivalents, the Court need not consider DOE when granting this Motion to Dismiss.  *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1363 (Fed. Cir. 2007) (Dyk, J., concurring) (doctrine of equivalents must be pled with at least "some specificity" on a limitation-by-limitation basis).

However, Big Beings cannot cure the deficiencies in its infringement allegations because the particular claim limitation at issue was repeatedly amended to exclude the specific embodiments that Big Beings now seeks to recapture through litigation.  *Duramed Pharm., Inc. v. Paddock Labs., Inc.*, 644 F.3d 1376, 1380 (Fed. Cir. 2011) ("the doctrine of prosecution history estoppel prevents a patent owner from recapturing through the doctrine of equivalents subject matter surrendered to acquire the patent."); *see also supra* Parts I.B-I.C.

Big Beings cannot rebut the presumption of total surrender of alleged equivalents because it amended its claims to avoid prior art showing the alleged wing tips at or below the level of the neck hole.  *See supra* Parts I.B-I.C.  There is no argument that the alleged equivalent was "unforeseeable at the time of the application," or that "the rationale underlying the amendment

[bears] no more than a tangential relation to the equivalent in question." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493 F.3d 1368, 1375 (Fed. Cir. 2007).  Big Beings fought for years to obtain broader claims with wing tips located lower than required by the issued claims, but failed to persuade the examiner such claims were patentable.  *See supra* Parts I.B-I.C

Big Beings' disavowal of claim scope was clear and deliberate.  Under longstanding Federal Circuit precedent, the subject matter disclaimed, including the entirety of the T-Like embodiment, has been dedicated to the public and cannot be recaptured under DOE.  *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002).  Thus, Big Beings' Complaint must be dismissed.

## IV.  <u>BIG BEINGS' CLAIM FOR UNJUST ENRICHMENT IS PREEMPTED</u>

Big Beings' unjust enrichment claim should be dismissed because it is entirely preempted by the federal Patent Act.  Big Beings' claim for common law unjust enrichment is based solely on the same allegations as its patent infringement claim, seeks the same relief, and adds no additional facts to support any alternative basis of relief.

"[F]ederal patent law preempts any state law that purports to define rights based on inventorship." *Univ. of Colo. Found. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999).  Where an "unjust enrichment claim directly relates to [Plaintiffs'] rights under federal patent law, and seeks to enforce such rights under a common law guise, the unjust enrichment claim is preempted." *Emseal Joint Sys., Ltd. v. Schul Int'l Co., LLC*, 2018 WL 3733939, at *3 (D.N.H. 2018).

Big Beings' unjust enrichment claim incorporates its allegations of patent infringement and merely adds "[a]s a result of the conduct of Nested Bean as described above . . . Nested Bean will unjustly benefit from and be unjustly enriched by, its own intentional and wrongful acts." *Complaint*, at 4 ¶ 17.  The only allegedly wrongful acts alleged in the Complaint are patent

infringement.  *See id.* at 3-4 ¶¶ 7-15.  In fact, the Complaint does not even include facts to allege that Nested Bean acted intentionally or willfully.  *See id.*  Thus, Big Beings' conclusory allegations of "intentional" conduct would present too slender a reed to support a viable complaint even if the claim were not entirely preempted by the Patent Act.  *Iqbal*, 556 U.S. at 678.

Because Big Beings' claim is preempted, and because it fails to allege a cause of action for unjust enrichment beyond threadbare recitals supported by conclusory statements, Count II of the Complaint should also be dismissed.

## V.   BIG BEINGS' COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Big Beings should not be permitted an opportunity to amend its Complaint because the allegations in the Complaint prove that Nested Bean does not infringe the '711 Patent.  The deficiencies in the complaint are not technical in nature, nor can they be cured by pleading different or additional facts.  No proposed amendment will change the fact that Nested Bean's Zen One does not infringe the '711 Patent.

"If amending the complaint would be futile—say because the proposed amended complaint would still be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6)— leave need not be granted."  *Chawla v. Pitter*, 2015 WL 6509119, at *1 (D. Mass. 2015).  The decision to allow amendments to a pleading is a matter within the discretion of the Court, and an order denying leave to amend will be reversed only for an abuse of discretion.  *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 806 (1st Cir. 1987).

The deficiencies in Big Beings' Complaint are not the absence of well-pled factual matter, but that the well-developed factual record already before the Court shows that Big Beings cannot state a claim for relief against Nested Bean under the '711 Patent.  Big Beings' Complaint is based on disclaimed subject matter.  It alleges that the Zen One reads on the '711 Patent "as

exemplified by" this disclaimed embodiment.  Big Beings is not permitted to repudiate through amendment what it has alleged the Zen One exemplifies.  *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325 (Fed. Cir. 1998) (leave to amend is grounded on expectation of facts reasonably consistent with those already pled).  Big Beings' Complaint fails because it is attempting to police subject matter it does not own.

## VI.    CONCLUSION

For the reasons set forth above, Nested Bean respectfully moves that the Complaint be DISMISSED WITH PREJUDICE, for failure to state a claim for relief that can be granted.

Dated: March 18, 2020                       Respectfully submitted,

                                            By:   /s/ *Craig R. Smith*
                                                  Craig R. Smith (BBO No. 636,723)
                                                  Eric P. Carnevale (BBO No. 677,210)
                                                  **LANDO & ANASTASI, LLP**
                                                  60 State Street, 23rd Floor
                                                  Boston, MA 02109
                                                  Tel:   (617) 395-7000
                                                  Fax:   (617)-395-7070
                                                  Email:   csmith@lalaw.com
                                                                ecarnevale@lalaw.com

                                            ***Attorneys for Defendant Nested Bean, Inc.***

### CERTIFICATE OF SERVICE

I certify that on March 18, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically sends email notification of such filing to registered participants.  Any other counsel of record will receive the foregoing via e-mail in PDF format.

                                            /s/ *Eric P. Carnevale*
                                            Eric P. Carnevale